By the Court.—Sedgwick, Ch. J.
The action is for damages from false representations. The complaint charged also fraudulent concealment, in connection with the representations. The case went to the jury, upon the allegations of false representations, and a verdict was not taken as to the fraudulent concealment.
For the purposes of this appeal, it is enough to say, that the alleged representations concerned certain accounts, in a livery-stable business, against about seventy-seven persons, and were alleged to have been made to'induce the plaintiff to give his check for $1,393.63, to defendant Proal. The complaint alleged that the defendants “ told the plaintiff that said accounts were perfectly good, ” and that “ said accounts could be and would be collected in time to pay” a note, made in the transaction by defendant Proal, to plaintiff.
On the trial, at the close of the testimony, the respective counsel for the defendants, asked the court to charge that as matter of fact the defendant Pool did not represent all these accounts to be good or collectible.
The evidence . on this point, was as follows. A witness who was outside of the room, when, as plaintiff maintained, the representations were made, heard de *405 fendant Pool say, “I know these to be good.” The rest of his testimony showed that he did not know to what Pool referred in this remark—whether to certain names, or to all names, on a list that the witness only supposed Pool might have had in his hand.
The plaintiff testified that Pool took the accounts from Proal, and read over a few of the names; that he said they were good accounts, and he thought they would be paid; that Pool commenced to explain about the accounts ; he thought they were good, and would be collected ; that after a time, “ he took the accounts a second time from Proal, and commenced at the beginning, and read them through, one by one, commenting, as he read, upon each. ” He would state, “ that is good; that man is perfectly good;” that Pool continued reading the accounts, and in several instances said, “ here is a man, that I know to be good; and he seemed to be quite familiar with the accounts, all of them except two or three, and he put particular stress upon the quality of the accounts, and wished to impress me, that they were good. ” On cross examination the plaintiff testified, that Pool again took the paper, and read over, a second time, the list from the beginning, and as 'he read, he commented upon each one ; “he did not say, that.all the accounts were good, but the comments were all good; there were ten or fifteen names, maybe, that Mr. Pool, did not seem to know, the balance of the names Mr. Pool, seemed to know, and commented upon them very strongly; stating some of them were good, and some he knew to be perfectly good, and he turned, once or twice, to Mr. Proal, and asked him, why he did not take these accounts, and collect them; that he had only to present them.”
The defendant Proal testified, that the plaintiff asked him, if the accounts were good, and he told him yes, and his reason for believing that they were all *406 good, was partially, from his individual knowledge, and partially, from statements made by others ; that he believed them to be all good.
In my opinion, an allegation that the representation was, that an account is good, is not sustained by proof, that the representation was, that the person charged by the account was good. The latter means, that the person charged has sufficient pecuniary resources, to pay the account, but not that the account makes a valid charge. The testimony showed that, if plaintiff was to be believed, Pool made statements, as to the persons, who were charged by the accounts severally. He made none as to the accounts in a lump. It might perhaps, be properly held, that if he spoke the same thing, as to each, it would be enough, to charge that he spoke as to them all. Then, as matter of fact, the representation of Pool, as to them all, would only refer to the pecuniary responsibility of all the persons charged; of some, he, according to the plaintiff’s testimony, said that they were good; of others, that they were perfectly good; and of the remainder, twelve or fifteen in number, he did not know the pecuniary responsibility. I think, that the defendants, were entitled to have it charged, that so far as the case was affected by the fact, of what Pool said, as matter of fact, Pool did not represent that all these accounts were good ; because, first, his representations concerned only the pecuniary means, or standing of the persons charged, and, second, the plaintiff’s case showed that he made no representation as to twelve or fifteen accounts.
The counsel further asked the court to -charge “ that there was no evidence of any representation as to Brown’s solvency on which the plaintiff relied.” The complaint charged that one of the inducements to plaintiff was a representation that Brown was solvent. This Brown endorsed the noté under circumstances *407 which, it is not necessary to detail. I am of opinion that it affirmatively appears by testimony given by plaintiff, that what Pool said as to Brown was not any inducement to the plaintiff to part with his check. It was said to Proal after the arrangments were completed, and the plaintiff did not rely on it.' Moreover, what was said did not refer to Brown’s solvency. Pool, speaking to Proal, told him to get Brown’s indorsement on the note, so as to make good. This evidently referred to having an indorsement for the purpose of procuring a discount.
The court refused to charge, as asked in these two instances, and exceptions were taken. The charge as made did not embody the matters referred to in the requests. For these reasons, I think there should be a new trial.
If an action will lie for a representation that accounts of this kind could be and would be collected within a certain time, which is the representation alleged in the complaint, it could be supported only on the theory, that such a representation was a statement of existing facts as to the character of the accounts as they existed, at the time of the representations, such as that the persons were then solvent or pecuniarily responsible, and that they were actually indebted for the matters charged. ' My opinion is that the alleged representations are not statements of fact, but are expressions of opinion. At least, the plaintiff would be bound to prove the falsity of the representations by showing that the persons were not solvent or pecuniarily responsible, or that they were not indebted. The proof on this, point consisted of the facts, that about two hundred and ninety dollars of the accounts had been collected ; that the bank of which defendant Pool was president, and to which the accounts had been given for collection, had collected no other sum, and that a collector in whose hands. the accounts were *408 finally placed, after the use of what might have been found to be diligence by the jury, collected no more.
His testimony on this point consisted of an account of his failure to get replies from some, a denial of liability from others, further promises from others, which were not kept. This did not show that the parties were not solvent, or without means to pay, or not indebted. And the declarations of the parties to the collector, were not evidence against the defendants of the truth of what was declared.
At the time of the representations, when plaintiff gave his check to defendant Proal, he received, beside the benefit of the assignment of the accounts, a note of the defendant Proal at three months. At the maturity of the note, an amount of about $200, that had been collected on the accounts, was applied to the note, and a new note made by Proal, at three months, was taken by the plaintiff. Again, at the maturity of the second note, a third note by Proal was taken by the plaintiff.
When the first note was taken, the plaintiff had an election between reliance on the cause of action for false representations or on the cause of action upon the contract of the promisory note. If he knowingly received the benefit to any extent of the contract, he waived the right of action in tort.
The complaint alleged as part of the statements of the defendants, that the “said accounts could be and would be collected in .time to pay the said note before the same became due,” and the other representation that “theaccounts were perfectly good,” in the meaning of the complaint, is to be restrained to the character of the accounts that would insure their collection in time to pay the note. When the first note became due, and again, the second, it appeared to the plaintiff, and he must have known, that within the meaning of the complaint, the accounts were not good, and could not be collected within three months. Knowing this, *409 he acted upon the note he first received, parted with it. to defendant Proal, and took the second note. In doing this, he affirmed what he might have avoided, and waived his right to proceed for the tort.
I am of the opinion that the judgment should be reversed and a new trial ordered, with costs of the appeal to the appellant to abide the event.
Freedman and Russell, JJ., concurred.